**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

DONTRELL AHMAD LEFLORE 'EL,

Plaintiff,

v.

TIFFANY J. DOHERTY, TODD D. ANDERSON, MATTHEW GREIBER, LT KROMBOS, ANTHONY J. BOVEE, AMY ZIEGLER, APRIL SCHULTZ, and KERRY COLLIEN,

Defendants.

Case No. 26-CV-664-JPS

**ORDER**

Plaintiff Dontrell Ahmad LeFlore 'El, an inmate confined at the Wisconsin Resource Center ("WRC"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF 1. This Order resolves his motion for leave to proceed without prepayment of the filing fee and screens the complaint.

## 1. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On June 8, 2026, the Court ordered Plaintiff to pay an initial partial filing fee of $21.63. ECF No. 5. Plaintiff paid that fee on July 9, 2026. The

Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799

F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff brings this case against Defendants Tiffany J. Doherty ("Doherty"), Todd D. Anderson ("Anderson"), Matthew Greiber ("Greiber"), LT Krombos ("Krombos"), Anthony J. Bovee ("Bovee"), Amy Ziegler ("Ziegler"), April Schultz ("Schultz"), and Kerry Collien ("Collien"). ECF No. 1 at 1. On April 7 or 8, Ziegler came to Plaintiff's cell to discuss is request seeking to speak to a psychologist for thoughts of self-harm and suicide. *Id.* at 5. Plaintiff made it clear that he intended to self-harm and hopefully to die by suicide. *Id.* at 6. Ziegler told Plaintiff that no psychological staff were available but that she would pass his message on. *Id.* Later that day, Krombos came to talk to Plaintiff about his conversation with Ziegler. *Id.* Plaintiff again explained his intent to self-harm. *Id.* Krombos told Plaintiff that the suicide cells were occupied and that he would get a psychologist, but no help came. *Id.*

On April 10, Collien was passing out puzzles on the restricted housing unit. *Id.* at 7. Plaintiff asked Collien why his request to see psychological services ("PSU") was being ignored. *Id.* Collien replied that PSU was short staffed and that no one had told him about Plaintiff's requests. *Id.* Plaintiff then informed Collien about his intent to self-harm. *Id.* Collien told Plaintiff he could not pull him out of his cell because he needed to finish his rounds. *Id.* at 8. Plaintiff began yelling that he was tired of being lied to and ignored and that he would indeed kill himself. *Id.* Collien told

Plaintiff he did not have time for him and Collien continued passing out puzzles to other inmates. *Id.*

On April 11, Plaintiff put in another request to see PSU. *Id.* On April 13, Plaintiff reached his breaking point of being ignored after asking for help. *Id.* at 10. At about 12:15 p.m., Plaintiff told Doherty that he needed to see PSU, that he was suicidal, and intended to self-harm. *Id.* Doherty told Plaintiff that she would pass along the information to Anderson in the sergeant bubble. *Id.* About ten minutes later, Plaintiff saw Doherty taking other inmates to participate in outside recreation. *Id.* at 11. Plaintiff was exasperated at Doherty ignoring his plea for help and he therefore began yelling that he was very suicidal and needed to see a psychologist. *Id.* Doherty responded she was going outside but that she had told Anderson. *Id.* Plaintiff began to panic and pressed his emergency call button. *Id.* at 12. Plaintiff told Anderson that he was suicidal and was planning to self-harm if he was not placed on observations. *Id.* at 13. Anderson responded that he needed to know exactly how Plaintiff planned to harm himself before he called a psychologist. *Id.* Plaintiff told Anderson that he was not playing and that he was going to consume all his on-person medications. *Id.* Anderson continued to mock Plaintiff and then cut off the speaker. *Id.*

Plaintiff was devasted that he received no help. *Id.* at 14. He grabbed thirty tabs of Ibuprofen and ninety-nine tabs of Tylenol. *Id.* Plaintiff the pressed the emergency call button again and told Anderson what he did. *Id.* About five minutes later, Greiber approached Plaintiff's cell and asked him what was happening. *Id.* Plaintiff then showed Greiber the medications. *Id.* Plaintiff then took all the medications in front of Greiber. *Id.* at 15. Plaintiff explained his situation to Greiber and that he would not be cooperating because he wanted to die. *Id.* Greiber tried to convince Plaintiff to come out of his cell for help. *Id.* Bovee then came to Plaintiff's

cell to try to get him to come out. *Id.* at 16. Ziegler then arrived at Plaintiff's cell and asked to evaluate him. *Id.* Plaintiff was taken to the nurse's station and vaguely remembers having his vitals taken before passing out. *Id.* Plaintiff was dragged to another holding cell while he was in excruciating pain. *Id.* at 17. Plaintiff was then transported to the hospital for treatment. *Id.* Plaintiff experienced extreme pain at the hospital because he was not allowed pain medication until his levels came down. *Id.* at 18. Plaintiff was released from the hospital the following day. *Id.*

Plaintiff was placed in observation status upon returning to the institution. *Id.* Plaintiff was in observation for four days and was still in pain and unable to hold down much food. *Id.*at 19. On April 25, Plaintiff submitted an inmate complaint for staff failing to provide psychological treatment. *Id.* Plaintiff received two conduct reports for the misuse of medication and disobeying orders. *Id.* Plaintiff maintains that he should not have received conduct reports related to self-harm incidents. *Id.* at 20. Schultz signed off on Greiber's bogus conduct report. *Id.* at 20.

Plaintiff challenged his conduct reports and called Doherty and Collier as witnesses. *Id.* at 21. Schutze denied Plaintiff's request for his clinicians to testify or for PSU to represent him at the hearing. *Id.* Doherty lied at the hearing and Plaintiff was found guilty of the violations. *Id.* at 22. Bovee gave Plaintiff a punishment of thirty days in restricted housing and charged restitution. *Id.* Plaintiff served his thirty days; however, Warden Meisner later expunged the conduct report in its entirety. *Id.* at 23.

### 2.3 Analysis

The Court finds that Plaintiff may proceed on an Eighth Amendment deliberate-indifference claim against Defendants Doherty, Anderson, Greiber, Krombos, Ziegler, and Collien for their indifference to the risk of Plaintiff's self-harm. The Eighth Amendment prohibits "cruel and unusual

punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care." *Phillips v. Diedrick*, No. 18-C-56, 2019 WL 318403, at *2 (E.D. Wis. Jan. 24, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). While a prison official's deliberate indifference to a prisoner's substantial risk of serious harm violates the Eighth Amendment, not every claim by a prisoner that he did not receive adequate care will succeed. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). To prevail on such a claim, a plaintiff will have to provide evidence showing that "(1) his medical need was objectively serious, and (2) the defendant[] consciously disregarded this need." *Berry v. Lutsey*, 780 F. App'x 365, 368–69 (7th Cir. 2019) (citing *Farmer*, 511 U.S. at 834).

Prison staff have a duty to prevent inmates from causing serious harm to themselves. *Pittman ex rel. Hamilton v. County of Madison*, 746 F.3d 766, 775–76 (7th Cir. 2014). Before an official will be liable for ignoring a risk of self-harm, however, the "risk of future harm must be sure or very likely to give rise to sufficiently imminent dangers." *Davis-Clair v. Turck*, 714 F. App'x 605, 606 (7th Cir. 2018) (internal quotation marks omitted). The question of when that risk of future harm becomes "sure or very likely to give rise to sufficiently imminent dangers" depends on the circumstances of the case. *See, e.g., Freeman v. Berge*, 441 F.3d 543, 546–47 (7th Cir. 2006) (explaining that "at some point," to ensure a prisoner is not "seriously endangering his health," prison officials would have a duty and right to step in and force a prisoner on a hunger strike to take nourishment); *see also Davis v. Gee*, No. 14-cv-617, 2017 WL 2880869, at *3–4 (W.D. Wis. July 6, 2017) (holding that to show a constitutional injury, the harm must present an objectively, sufficiently serious risk of serious damage to future health; swallowing a handful of Tylenol fails to do that).

Here, Plaintiff alleges that these defendants were aware that he intended to self-harm and failed to appropriately act. Plaintiff further alleges that he self-harmed after these defendants failed to help him and then was hospitalized and experienced extreme pain as a result. As this early stage, the Court will allow Plaintiff to proceed on an Eighth Amendment claim against Defendants Doherty, Anderson, Greiber, Krombos, Ziegler, and Collien for their deliberate indifference to Plaintiff's risk of self-harm. The Court does not find that Plaintiff states a claim against Bovee, however, because he arrived at Plaintiff's cell after he had already self-harmed and no facts suggest that Bovee had any knowledge or involvement with Plaintiff not being able to see PSU.

Second, the Court finds that Plaintiff may not proceed on a Fourteenth Amendment claim for a deprivation of liberty without due process. A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. *Id.* Disciplinary segregation can trigger due process protections. *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (citations

omitted). When making the determination whether an inmate is entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Id.* If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. *Id.* at 697–98. On the one hand, "six months of segregation is 'not such an extreme term' and, standing alone, would not trigger due process rights." *Id.* at 698 (quoting *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted, and prisoners otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. *Id.* at 697 (citing *Wilkinson v. Austin*, 549 U.S. 209, 224 (2005)).

Once a liberty or property interest has been invoked, the Court looks to what process was due. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary

hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Here, Plaintiff's complaint does not contain facts showing that Defendants interfered with a liberty interest. Plaintiff alleges generally that he received thirty days in disciplinary segregation as a result of an allegedly unfair disciplinary hearing from Schultz and Bovee, but he does not elaborate on any of the conditions he experienced during that time in segregation. On these facts alone, the Court cannot determine that Plaintiff suffered an atypical and significant deprivation. *See Marion*, 559 F.3d at 698. Accordingly, based on the allegations in Plaintiff's complaint, the Court cannot determine that Plaintiff had a protected liberty interest. As such, Plaintiff may not proceed on a due process claim against Bovee or Schultz. The Court will therefore dismiss these defendants for the failure to state a claim against them.

## 3. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment deliberate-indifference claim against Defendants Doherty, Anderson, Greiber, Krombos, Ziegler, and Collien for their indifference to the serious risk of Plaintiff's self-harm.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises

all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Bovee and Schultz be and the same are hereby **DISMISSED** for the failure to state a claim against them;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants **Doherty, Anderson, Greiber, Krombos, Ziegler, and Collien**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL

5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $328.37 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 19th day of October 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.